We are going to hear today is McNair v. Johnson & Johnson and Mr. Lindsey, whenever you are ready, take your time. Your honors, may it please the court, my name is Richard Lindsey and I am appearing on behalf of Ms. Kimmy McNair and Larry McNair. Today this court has a unique opportunity to revisit, reinterpret, and clarify Foster v. American Home Products while applying the same logic and foreseeability to a different set of circumstances wherein a generic has no control over labeling for a drug and as a result preserves the rights, recourse, and remedies of the appellate Kimmy McNair voting the appellate JPI for the creation, continued control, production, acceptance, and distribution of the package insert and label for Levaquin and Levofloxacin. The standard applicable to the matter at bar is de novo as the district court granted the summary judgment in favor of the appellate. Today this court should find that one West Virginia products liability case law allow for claims of failure to warn against a brand and manufacturer who in some way is responsible for the package insert and two, because generics are prohibited from making any unilateral change to the package insert as opposed to the ability to do so by the brand and manufacturer that the consumer like Kimmy McNair should have a right to recourse and remedy against the brand and manufacturer. The facts are as follows. On March 23, 2012, Kimmy McNair presented to her PCP and was diagnosed with pneumonia. She was prescribed Levaquin but took the generic. One week later, she developed acute respiratory distress syndrome and suffers from a permanent injury of permanent pulmonary dysfunction. The appellate JPI gained approval for Levaquin back in 1996 and maintained that patent and exclusive right over Levaquin until 2011. However, prior to 2011 and while JPI continued to maintain its exclusive right over Levaquin, JPI in 2002 removed the adverse reaction of ARDS, acute respiratory distress syndrome, from the package insert. Is this all controlled by West Virginia law? Your Honor, I would submit that it's controlled as far as the product's liability aspect, it is controlled by West Virginia law. What do you mean by product's liability, is that the failure to warn? Failure to warn, yes, Your Honor. Misrepresentation. So you can't sue the generic action because you agree that's preemptive? Yes, Your Honor. And so you have to go against the brand product here, and the issue here has to do with whether West Virginia would allow you to sue a brand manufacturer when in fact that manufacturer did not manufacture this particular drug, which is a generic drug. Yes, Your Honor. You think West Virginia would be different than what looks like to be the overwhelming majority of the other jurisdictions out there that say you can't do it? Yes, Your Honor. Although I would also submit to the court, given the special and unique circumstance of pharmaceutical drugs, that in fact when it comes to the question of the package insert, that is manufactured by the appellee. That has been presented in any other court and litigated, as I said, that's an interesting argument because I guess you want to get there because it would indicate that in fact it was manufactured by the brand, and therefore West Virginia law allows you to get there. Well, yes, but it's just, Your Honor, it's more of an observation that because generics are preempted, and because the appellee continues to maintain control over the package insert, which is the issue before the court, and the issue that's raised in McNair, they continue to distribute that package insert, be it to a generic or anywhere else. The generic does not have a right to unilaterally change that package insert, and specifically to the appellee, we have the distinct circumstance wherein in 2002, the appellee decided to drop the adverse reaction of AARDS from the package insert. So even if, the way the law sits today, even if the generic wanted to include that again, the generic has no power to do so. So it's... Well, all of those facts are clear. Yes, Your Honor. My only question is, can you sue this brand under the state law, when the brand did, in fact, manufacture the product, but you're saying that the packaging, or at least the actual piece of paper, I guess, you put in there, they do manufacture it, because they determine what that is, and by putting it in there, it comes from the brand. Yes, they may not make the paper, but they decide what's in it. Well, so... Yet, Your Honor... And you can't change it either. And it can't be changed. No, Your Honor. So... So... Let me ask you, in this case, you sued the manufacturer as the, Johnson & Johnson, as the manufacturer of the product, and that's what's required under West Virginia law. The manufacturer has to be the manufacturer, has to be the person producing the product that, with respect to which it failed to warrant the, and the recent circulation by the court of the jury instructions, and the Hiloski-Michelin tire case, both indicate that the manufacturer has to be... Fair to warrant has to be a product that the manufacturer made, or distributed, or sold. And that's the way you pled it. It turns out that Johnson & Johnson didn't manufacture this product, or did not label it. They, that it was manufactured by somebody else, and they put a label on, which was obviously was the same label that Johnson had. But under existing West Virginia law, you pled the case, but the summary judgment was that you didn't produce, that Johnson & Johnson didn't produce the product. So under existing West Virginia law, doesn't that end it? No, Your Honor, because the parties to this appeal agree that there are two cases that control the product's liability litigation in this case, in West Virginia. And I would also add, Your Honor, that West Virginia, unlike a number of jurisdictions relied upon by the appellee, there is no statute, there's no statutory provision for product's liability. No, but the Morningstar case, and the, which was a certification case, they lie on the restatement 402A, or whatever it is, and the other restatement provisions, and they have very traditional common law product's liability law. And in every one of those cases, including its recent jury instructions, product's liability suit has to be lodged against the manufacturer, distributor, or seller of the product being challenged. And that's the way you pled it, because you assume Johnson manufactured the drug in this case, but it turns out that this happens to be a generic. So the logical course for you to take, then, is not to sue Johnson, but to sue the generic. But as you point out, because of the peculiarity of the PLEVA case, you can't sue generics. And the Supreme Court said that is a real aberration in the law, and it's unfortunate, but we're stuck with it, and Congress would have to fix that. But your claim is a straight product's liability case against Johnson, and you can sue Johnson under state law. That's a Wyeth case, and you can sue Johnson. But to establish a cause of action, you have to show that Johnson manufactured your product and fail to give you a warning with respect to the product they sold, distributed, or manufactured. Yes, Your Honor. And just a couple points. Your Honor mentioned the jerk. Yes. No, no. Do you agree? Or just, yes, you heard it. Yes, I heard it. No, no, I disagree. I disagree. I disagree respectfully with Your Honor. The two cases and two prongs of product's liability that both parties relied upon before the supplementation of jury instructions just a few days ago is done via Kanawha County Board of Education, where a plaintiff is entitled to bring in action a product's liability if she can show that the product, which is alleged to have cause injury, was defective when it left the manufacturer. The package insert was defective when it left the manufacturer. I understand. That's the perfect case to verify the point, because the person sued in that case was the manufacturer, seller, or distributor of the product. And that is the whole key. I'm not talking about the – a defective label does give you a right to sue, but you have to sue the manufacturer of the product with which the label is attached, to which the label is attached. And in this case, that's what you did. You sued Johnson & Johnson on the assumption that they manufactured or sold or distributed the product. After the affidavits came in, you learned that Johnson & Johnson didn't manufacture this product, and the court granted summary judgment. Now, your argument is, I guess, Johnson & Johnson is now liable for generic manufacturing of product, labeling of product, and that's pretty – that's not under West Virginia law. Well, under West Virginia law, Hill v. Joseph Ryerson, citing the ALR 3rd edition, plaintiffs were required to prove that the defendant produced, manufactured, sold, or was in some way responsible for the product. The appellee here is ultimately responsible in every way that can be imagined for the product of the package insert, because the generic doesn't – because generics – Johnson doesn't even want the generics. They didn't have any dealing with the generics. They didn't create the generics. The generic manufacturers are, so to speak, interlopers. They come in under federal law, able to do these drugs, but that's not Johnson & Johnson's duty or responsibility. Johnson & Johnson registers its own product, gets its own label, gets its own approval, and is responsible both under statute and common law for that product. Your Honor, I would just posit that the appellee, because they have whole and total control of the package insert – we're not talking about the formula or the pill itself, the package insert – and because they decided in 2002 to drop ARDS from the package insert and the generic, it doesn't have a right to change it unilaterally, according to MedSync, Viva v. MedSync, and Mutual v. Bartlett, the responsibility goes to the appellee. And again, going back to West Virginia products liability law, again, this is a statement that was put forth by the appellee to begin with, was in some way responsible for the product. But for the brand and manufacturer, there would be no generic. So ultimately, it comes back to the brand and manufacturer when you're talking about failure to warn when it comes to the package insert and the failure to include ARDS, a condition that my client developed that you shouldn't have developed. Yes, Your Honor. In your opinion, has the Supreme Court of Appeals of West Virginia answered this precise question? No, Your Honor. And did you seek to certify this question in the District Court? No, Your Honor. Okay. Thank you. Part of the... Are you seeking it now? Yes, Your Honor. What are you seeking us to certify? Well, whether or not a brand and manufacturer can be held liable for failure to warn under West Virginia law. That would be the question to be sought before the Supreme Court of Appeals of West Virginia. And I may add, going back to the jury instructions that were produced, again, a week ago, those, from my personal experience as a trial attorney, jury instructions are not even formalized until before the jury goes out because it's based upon the evidence before the court. The court went out of its way, the Supreme Court went out of its way to specifically state that these are non-binding. However, the cases of Hill v. Johnson-Ryerson is binding. The case of Morningstar is binding to the extent that it reverts back to the manufacturer and distributor of the package insert, which is and has always been the appellee in this case. So if we certify it to the Supreme Court of Appeals for West Virginia, they come back and say, no, we don't allow it. That's the end of the case. I believe that would be the result of the case. You just have a difficult case. I mean, these facts are very difficult because you have a consumer who bought a drug and a doctor assigned a brand name, but the pharmacist was doing it by state law and sometimes required by an insurance company to give it a generic drug. And it's supposed to be the exact same thing, but that generic drug company cannot change that label. Cannot. It's got to be the same label that the FDA approved for the brand. And now, so you've now got this new type of action, this innovative liability type situation that comes up. States have looked at it. Circuits have looked at it. And almost overwhelmingly, they say, no, you can't sue it. And yet, something is wrong here because your client, the consumer, is left without a remedy of sort if they can't go after this brand, yet the law is there, but we look to the state for it. And so West Virginia is one of those quirky states that, I shouldn't say quirky, worse, West Virginia is a state that has not directly addressed this as some states. And I suppose, as Judge Neiman has alluded to, we can look at these cases, the Hill case, the Dunn case, all of them seem to indicate that you have to manufacture a product, as they seem, which may give the avenue of saying, well, worst case scenario, certified, and that'll be the end of it. I think that's a good point, Your Honor, just to the extent that what these cases seem to say. As far as, going back to products liability, I noticed that in reference to the Dunn case, there was an argument, I think it says specifically that unstrict liability extends to those products and products liability chain of distribution, so that innocent sellers can be subject to liability that is entirely derivative, simply by virtue of being present in the chain of distribution. The package insert is part of the chain of distribution. It begins with the appellee. It may end with the generic. But according to West Virginia law, even if you, assuming arguendo, that the chain of distribution argument is applicable, the appellee would say it would go against the appellee, I would argue and put forth to the court that, in fact, the appellee is at the top of the chain of distribution. They are the beginning. Again, but for the brand and manufacturer, there would be no generic. So Your Honor, I reserve five minutes for rebuttal. I think that's already... Thank you, Your Honor. All right, Mr. Winter. Good morning. May it please the court, my name is John Winter. I'm here on behalf of Appellees. Curiously, I just want to ask about, is there any cause of action from your position that would exist for this consumer under these facts? The answer, Your Honor, is no. And the reason it is no is because of federal law, FDA, and two decisions by the United States Supreme Court. And both the decisions by the Supreme Court, Mensing and Barnett, expressly say, this is an unfortunate quirk. I'm paraphrasing. But it's clear that if this drug had been the brand drug, there would be a cause of action. In other words, an individual who has the same drug that's generic, and the generic can be required, sometimes by the state, to be the one that you get. Even though the doctor says, given the brand, I think there are state laws that says, you know, if it's available, insurance companies, insurances, you've got to give that. And the pharmacist just gives a generic drug, and obviously, the consumer doesn't even know it. If you don't know the difference between a generic and that, unless maybe the label says it, I don't know. But in any event, that's neither here nor there, but the point being is, this is a situation where it depends on which drug is actually given to you. If you get the brand, and it's available as a cause of action, you can sue it. If it's generic, you can't do it. Your Honor, and that is the way federal law works, which is why preemption exists. So the dispute here is not a question of West Virginia law, and both the Supreme Court cases are very explicit. It would be a question of West Virginia law if West Virginia allowed you to sue the brand one under this law, would it not? If West Virginia didn't follow the rule that you can only sue the manufacturer of the product that you used, whose rule? That's the West Virginia rule. I was going to say, if they did not have such a rule, in other words, West Virginia could permit it, is what I'm saying. That's why it's a question of West Virginia law. Do they allow you to do that? And your position is no. That's correct, Your Honor. And I could say to you now that there are 80 decisions in more than 30 states that follow that rule, which follows this Court's ruling in Foster. And there's one court in California, which is now going to the highest court in California, that says- Foster was in a different world, wasn't it? I mean, it was a little different back then. The fact that generic could do some things. I actually disagree with that, Your Honor, because if you look at Foster, the decision says we don't agree about generics not being able to change the labeling. The next paragraph says, we also reject, and that's a quote from this court, we also reject the notion that a plaintiff can sue a manufacturer whose product they didn't buy and use. Now, Foster was looking at Maryland law. The court below, following Foster, looked at the Meade decision. Quotes Dunn, which Dunn cites Morningstar, two West Virginia cases- You're pretty confident the Supreme Court of West Virginia, the Court of Appeals, would rule in your favor, aren't you? Well, I think, Your Honor, if we look at the pattern instructions, which the court issued less than a year, approximately a year ago, and you look at section 426, which is the essential elements of a failure to warn claim, the first element is, did the defendant, it's the plaintiff, used? Very clear, unequivocal, one, the first element of a five, I believe, Your Honor. But can we simplify this case and simply certify this to the Supreme Court of Appeals of West Virginia? Well, I think, Your Honor, there's no unsettled question here. But can we simplify the case and simply just have them just tell us? Well, Your Honor, I believe the case is simple right now. I don't think there's an unsettled issue under West Virginia law. Therefore, the reason to certify doesn't exist, quite candidly. My colleague's arguments about unfairness is an issue that is something that is a function of federal law. Congress could change the statute to allow people to sue generics. FDA could amend its regulations to allow people to sue generics. That is where the issue is. That is not an issue for this court or a West Virginia court to address. That's the inequity here. If the FDA amended its regulations to allow you to sue generics, how can you sue in a state that says you can't sue unless they manufacture the drugs? I think what would have to happen, Your Honor, is the FDA would have to amend its regulations to say generic manufacturers can amend their labeling. Therefore, someone could sue a generic for not adequately warning. If you go back to the Supreme Court decision, it's a function of the regulations as they apply to generics. So you'd have to amend the regulations, which has been bantered about for several years now, so that you could make a failure to warn claim. I suppose there's a good reason why they don't let them just amend the labels for the generic products. I mean, if it's coming from the brand, and the FDA has gone through this elaborate procedure to prove certain things that are bad, you tend to think that's what this drug is. Essentially, it's supposed to be essentially the same drug. It might be some pillows that are a little different, but the same drug. So the only thing different about it is, no, we should call it generic. And that is cheap. Well, the way the system is constructed, Your Honor, that is an important point. But there is a need for consistency, because you could have 15 different generic manufacturers. And all of them get different information about the use of their product as every pharmaceutical company gets. So if one generic manufacturer gets certain information and decides to change its labeling, you have confusion as to what it means for other generic. So FDA has been very clear as a need for uniformity in labeling once a medicine goes generic. Just so you're saying Congress could now make a law that says, essentially, generic drug suppliers are, in effect, manufacturers. Well, they are manufacturers right now, Your Honor. And the brands are considered to be manufacturers of those, because they control the labeling and control everything else. In other words, Congress could make a law like that. And in Mensing, the Supreme Court said, this is the way the law is which drives the result in Mensing, no generic liability. The Supreme Court was very clear. If Congress wanted to amend that statute, Congress could amend the statute. And obviously, you might have. I mean, the Supreme Court didn't say we would rule differently. But the Supreme Court was very clear that it could result in a different outcome. So I think that's where the dispute is. Mensing is a very tough case. It's a harsh case and essentially holds that generic manufacturers cannot be sued under state law because of preemption. And they then said explicitly, if Congress wants to create a cause of action to rectify that injustice, and they almost called it an injustice, that's up to Congress and not the courts. Now, having destroyed that cause of action against a generic manufacturer, the question now, that's going to put pressure on the brand manufacturers to face allegations such as are made in this case. Because the obvious problem is that here we allege is to be damaged by the drug, injured by the drug because of a failure to warn. I don't think it's a court role to solve this problem if the Supreme Court said it couldn't solve it and wouldn't solve it. I'm trying to figure out how you try to accommodate this. And the policy pressures are enormous, as Judge Wynn has pointed out. But here we are as a little circuit court stuck with PLEFA or Mensing, whatever you want to call it, which basically holds that Ms. McNeer  Your Honor. I mean, how do we address that? It's sort of, I guess there are causes of action. I mean, there are injuries caused by the military where people don't have causes of action, and certain other areas maybe. But this is a very strange bird. Your Honor, having spent a lot of my career looking at federal preemption, that is the way our judicial system, our courts work. If there are questions of- What the Supreme Court said basically is that Congress took the cause of action away from the states and then killed it. Yes, Your Honor. I think that's a fair case. I mean, that's exactly what they did, right? That's exactly what they did, Your Honor. And I think, to Your Honor, I think it's a little humble to say for this little court, because Foster, Your Honor, has been followed by- Well, Foster did what it had to do. Basically, on the generic side, it thought that there changes could be made. That's been changed by Mensing. But on the other side, when they talked about product liability, they said the cause of action flows, a product liability action flows against, or is assertable against the manufacturer, seller, distributor of the drug, and which is traditional. And Wyeth left that open. Johnson & Johnson is suable in state court for drugs it manufactures and distributes itself. But the problem here is Johnson didn't manufacture, distribute, or sell this drug. And it's by some generic, and the Supreme Court expressly recognized that's a dead action. And what I would say to Your Honor is that after Mensing, which is what I call it, I think there are at least three or four circuit courts that have looked at this issue with the benefit of the Supreme Court saying you can't sue a generic. And every circuit court is uniform, saying the Foster rule about suing a brand under state law still applies. Because when you look to the state law- That's just common law, product liability law. And my only questions to your colleague here were it looks like West Virginia isn't unsettled. They follow the restatement. They said we follow the restatement explicitly. They cited two provisions of the restatement. And the restatement is what Maryland had, what West Virginia had, what most of the states have. And it's a problem. And that's why I believe this is not an unsettled issue. Has anybody gone to Congress about this? There have been attempts several times after Mensing, both with Congress- Mensing's over five years ago. Both with Congress and with the FDA to get relief, quite candidly. And it's obviously the plaintiff's bar that has done that. And it becomes, as anything in Washington, an issue of politics. And whether something is going to get through Congress, it's one of those type issues. But there have been concerted efforts made to try and amend this. Now, to go back to- I mean, I'm not going to say Johnson & Johnson is deserving of a lot of sympathy. But- Well, let me ask you this, because that's an interesting statement, Johnson & Johnson and any other brand-name company. After the patent expires 20 years or so, companies can begin manufacturing generic drugs. Is there anything to prohibit Johnson & Johnson from doing so? Oh, from time to time- Or acquiring generic drugs. Well, I can say- Why wouldn't it? Because if he knows he's not going to- The generic brand that we sell, you don't have a cause of action against this consumer if we don't warn you properly or the design is off. Whereas this brand one we have over here is a problem. It seems like, to me, it's a way for even a brand company to insulate itself from liability by doing it. I mean, clearly, that's there. It's just a wrong. But I'm not saying you approve or disapprove of it. If the law allows it, it's just the way it is. That's just one of the things that exist. Your Honor, there are certain pharmaceutical companies which have gone out and acquired generic companies and or developed a generic division or generic business. And this is a good reason to do so in addition to the economic reasons for doing so. That is one thought process for some companies. That's not what Johnson & Johnson does. We really deal with the innovator brand products. We think that's the way, as a business model, the company should work. Having said that, from time to time, we have worked with an authorized generic. But that's not the company's business model. And there's all sorts of considerations when you talk about the price of something and what you're factoring in in terms of litigation costs. But my point was going to be, Your Honor, when we, meaning Johnson & Johnson, have had a medicine and it goes generic, we understand how the process works, we never priced, thought, or conceived that we would someday be the insurer for someone else's product. That is, in essence, what someone is now asking when we looked at the regulations and the rules and have, for a long time, believed that once it's a generic... Well, I got that point, but that's really not that bad. It's not technically someone else's product. It's your product they've been now allowed to manufacture. It's basically biologically the same product. The problem here is in the labeling of it and the warning. It's Johnson & Johnson controls that. And it was Johnson & Johnson went back and got that warning off of that label that if it had allowed it to stay there, it would have been on the label. So that's the problem you got here. And I get your point. I mean, everything you're saying now is a good policy, but I think the law, you sound pretty solid on the law, and probably should stick there. But statements like that take a little... Your Honor, I'm very glad you just asked me about taking it out of the label. Because it wasn't germane for the court below. But the facts are, and I checked this on Monday, go to the FDA website, which has the labeling for every prescription medicine. Go look up Levaquin. It's still up there. Go to section 5.7. What's still up there? The Levaquin labeling, like the brand label, the package insert. Go to section 5.7 in the warnings, which is like the important stuff. You will see in there acute respiratory distress. So that's still on the brand one? It's been on the brand one since 1996. So why is it not on the generic one? It is on the warning for the generic one. What... We have a slight misstatement of facts here. Back... Medicine's approved in 1996. Acute respiratory distress is in the warning section. There's a section at the end of the package insert called adverse reactions. What adverse events reported in clinical studies. At the time, the FDA regulations said if you saw 1% of something, you needed to put it in the adverse reaction section. ARDS was in the adverse reaction section and the warning section from the beginning. 2002, a new indication was approved. There was more clinical data. The incidence of ARDS in those clinical studies went below 0.1%. So pursuant to the regulations, it came out of the adverse reaction section, but stayed in the warning section. And it has stayed in the warning section to today. I mean, I checked on Monday. I know it didn't come out yesterday or this morning. So it has always been in the warning section. Now, we didn't point this out to the court below because it actually is not germane to the legal issue the court faced. But to answer Your Honor's question... It's germane to the equities. It's germane to the equities. It's been in the warning section. And it's a matter of public record. You can take judicial notice of it if I need to send you the decision that allows you to go to FDA website and say we can take notice of it. Section 5.7, Your Honor. I just... Anything further? If the court has any further questions, I just think the decision below should be affirmed. Thank you. Mr. Lindsey? Yes, Your Honor. The issue is brought up... The court seems to be interested in the rights and remedies and the fact that mensing takes away a right. I don't think they did. I think what mensing did is said Congress took it away. Now, it did require the Supreme Court to make that interpretation under the preemption law. But we have situations like under ERISA and under some of the labor where federal law sucks up state law and then regulates it or eliminates the federal law. And what mensing said is that generic liability was preempted by federal law and then said it's a preemption of your cause of action. That has to be by Congress. And, Your Honor, I'm sorry, I misspoke. Yeah. It was a preemption and basically it's based on Congress and they pointed the finger to Congress. They recognized the injustice of not giving a purchaser of generic drug a common law action. But to push back on that, I believe that courts are the final place for the protection of remedies. And, in fact, there's another way. We don't create causes of action and we don't expand causes of action. We just construe the law and apply it. And the question is, do you want us to try to get around mensing somehow? No, Your Honor, I just was going to the point of rights and remedies and the fact that in Hill v. Joseph, a West Virginia case, on page 303, it must be remembered that the field of product liability has evolved through judicial decisions. In fact, you can go all the way back to the Winterbottom case of 1842 where you had to prove privity if you were a third party injured by the product. I understand the state law can develop that way under the common law. That's the way the common law develops. In West Virginia, they basically apply the restatement, which is a restatement of the common law. But what mensing did is said, regardless of what the state law is, it's preempted with respect to labeling, warning, and drugs vis-a-vis generics. Whatever cause of action you have is preempted, precluded by federal law. And then they said, federal law doesn't recognize it and destroyed the cause of action. Now the question is, which you're now raising in the wake of that problem, is, okay, a manufacturer can be liable for a product that it didn't manufacture, that somebody else manufactured because of the federal labeling structure. And now what you're, that's pretty strange. Your Honor, I would submit that it isn't strange because what we're talking about is a package insert that is under the control of the appellee here. So it's a fiction that they're not, quote, the manufacturer of the package insert. And to the extent that a right of remedy can be pursued, the court can evolve based upon mensing what rights and remedies are available to plaintiffs. If the Supreme Court of, I'm from West Virginia, of course, and I do medical malpractice litigation. The court, through tort reform, has restricted certain actions, put cash on everything. But the court, if the legislature, excuse me, the legislature did that, if the legislature said, you know what, no more medical malpractice, the Supreme Court, even if it's a conservative court, will say, no, that's a cause of action that needs to be resurrected and pursued for the population. We don't certify cases that under existing laws settled and say to the state, you want to now create a new cause of action. That's what you're asking us to do if we ask to certify. Our certification statute is trying to get a clarification. We have a duty to decide cases that come before us under federal jurisdiction. And we don't relinquish that unless we fall within a statute that says, well, we're relying on state law, state law is unsettled, we have cases going this way, we have cases going that way, tell us which way it's supposed to go. What you're saying is we have state law that precludes this, but maybe they want to change it in view of the federal regulation. That's pretty novel. Your Honor, and again, I submit that to the court, and again, it's an argument that the court that in any way, shape, or form is responsible for the product. That's West Virginia law. That's always been West Virginia law. That hasn't been overturned. Before I leave, Your Honor, what I would suggest to the court is that the court's decision in 1994, as raised by Justice Wynn, was a different circumstance in that the court found no foreseeability because the generic at that time had the opportunity to change the label. That was central to the court's decision. This court's decision back in 1994. I submit to the court that the court can follow that same logic and come to the conclusion and find for the appellant here because it is foreseeable for Johnson & Johnson to be responsible for their package insert in light of mensing and find for the appellant and or submit a certified question to the West Virginia Supreme Court of Appeals to determine whether or not there's a cause of action that exists in accordance with products liability law. Thank you, Your Honors. Thank you, Mr. Lindsay. We'll continue on to the next case. Come down to the Greek Council now.
judges: Paul V. Niemeyer, William B. Traxler Jr., James A. Wynn Jr.